9, 6-0-0, 2-0-0, 13-0-0, 6-2-2, people of the state of Illinois, 1-5-3, v. Robert Meza, defendant, defendant. Argument will be cast against the defendant, defendant, Mr. Bruce Kirk. Argument will be cast against him. I believe he is Christian Schwinn. Good morning, Mr. Kirk. May it please the court and the counsel. Good morning, Your Honors. Good morning. A criminal defendant has a due process right to a trial by a fair and impartial jury that's not biased against them because of animosity toward gang affiliation and gang activity. And the mechanism for protecting that due process right is vordure during jury selection, questioning of potential jurors by the trial court and by defense counsel to identify biased jurors and to excuse them from service. In this case, Mr. Meza's trial counsel, John Paul Kerr, failed in his duty to protect Mr. Meza and protect his right to be tried by an impartial jury where he failed to examine potential jurors about potential prejudice against gang affiliation and gang activity. And the need for counsel to explore this potential gang bias was especially important in this case where gang violence was central to the state's evidence and central to the state's theory of the case. The trial court characterized the case as totally related to gang activity. Now, you cited the people versus strain. I think you're relying on that case, correct? Yes, Your Honor. And aren't there cases that came after people versus strain that say that the decision to question jurors regarding gang bias, it's an issue that belongs in the defense. It's considered one of trial strategy. How do we know that this wasn't trial strategy with which this lawyer was relying and he failed to delve deeper because he did touch on bias, gang bias at one point, didn't he? Yes, he did. So how do we know that this wasn't his strategy? Yeah, the cases that came after strain, Furge and the cases that follow up on that talk about the strategy of not wanting to draw undue attention to gangs by not questioning at all. In those cases, gang evidence at trial was significantly less than here and offered to show motive. And when you consider in this case the defense's overall trial strategy, it becomes apparent how important it was to try to exclude jurors who had gang bias. The defense presented no evidence in this case. Mr. Carroll argued to the jury that the state tried Mr. Maison a theory of accountability. And Mr. Carroll's argument to the jury was mere presence does not equate to accountability, and therefore he should be found not guilty. As Mr. Carroll pointed out, much of the evidence was established in the corpus directi, gang evidence, and the defendant's statement. Mr. Carroll argued that the statement could be reasonably inferred to show that Mr. Maison had no idea that a shooting was going to take place. And he argued that that's the inference you should draw from the evidence and that his mere presence did not make him accountable for the murder. And when you think about how are you going to sell that argument to a jury that's biased against gang activity after the jury has heard that the defendant does gang graffiti, and did so in this case after the event that he has tattoos of the gang, it's just not reasonable trial strategy to say, I'm going to convince this jury. What's the standard for us to find that something is not a reasonable trial strategy? Well, this was a second stage post-conviction petition dismissal. The standard to review there is de novo. So this Court, you know, the de novo standard is applied to give the defendant made a substantial showing of a deprivation of constitutional rights in this case. So the allegation is, or the argument is an ineffective assistance of counsel? That's correct. Claim based upon failure to question concerning gang activity. Yes. So with the Strickland, ineffective assistance, you have to follow, you have to meet Strickland standards. You have to meet both of the prongs of Strickland. So if even you meet the first here, how do you meet the second? Strickland is, the prejudice test, I mean, Strickland, the prejudice component of Strickland is not merely an outcome determinative test. We don't just say, would the defendant have been acquitted here? The prejudice problem also comes into play when the trial counsel's deficient performance renders the proceedings fundamentally unfair. The courts have recognized that even gang members, Jimenez, the case, says even gang members have a right to be tried by an impartial jury that's not predisposed to convict them because of their gang affiliations and activities. And by depriving the defendant of that fundamental right to a fair trial by an impartial jury that's not predisposed against them, the prejudice is that his fundamental right to a fair trial was lost here. I see where you're going. You know, it's simply not realistic to make that argument to a jury after you present no evidence when you have done next to nothing to get those biased jurors excluded. You know, it's significant in this case that the trial court found deficient performance here. I went back and read the jury selection process and he said, you know, it's not a situation where a defendant was not aware of the need to inquire about gang bias because he did ask one potential jury in the jury selection process. It's not a situation where counsel was trying to downplay or minimize the role of gang activity and gang evidence in this case. Counsel knew of the necessity to do this, but failed to do so, and therefore his performance was deficient. The trial court did find that it wasn't prejudicial, but as we've discussed, you know, it's not just would he have been acquitted. It's not just an examination of the evidence and finding that, you know, it was sufficient to convict. It implicates the defendant's right to a fair trial here. And Mr. Carroll's failure to screen for, during ordeal, gang bias deprived Mr. Meza of a fair trial. If the evidence is overwhelming, though, doesn't that affect our analysis of this? Well, I wouldn't characterize the evidence as overwhelming. I think Mr. Carroll's argument to the jury was a fundamentally good argument in that the statement can be, a reasonable inference is that the defendant was merely present and did not even abet the shooting of the victim here. You know, that's a credible argument to ask the jury to find him not guilty of being accountable for the offense here. The fact that there's other evidence on which a jury could find a guilty verdict doesn't mean it's overwhelming. I think that's a good argument. And if that's the argument you're going to make to the jury without presenting any evidence, you've got to make sure that you've got a fair and unbiased jury to make that argument too. And that's the prejudice of inefficient performance in this case. And then you submit that as a result of the trial court, trial counsel failing to question, then appellate counsel was likewise ineffective for failing to raise it on appeal. That's correct, Your Honor. The jury selection was included in the record on appeal that was available on direct appeal and not raised. But I think to get to ineffective assistance of appellate counsel, we need to establish the trial counsel was ineffective. That's the focus of the argument. Yes, Mr. Mazur did raise ineffective assistance of appellate counsel in his petition. We make that argument before this court also. Anything further? Anything further, counsel? You'll have an opportunity. Thank you, Your Honor. Thank you, Your Honor. Good morning. Morning. Counsel, may it please the court. Your Honor, the defendant raised a claim of ineffective assistance of appellate counsel for failing to raise that trial counsel was ineffective for questioning the voir dire about gang bias. It did not raise the defendant's fundamental right to a fair trial was violated. So I believe, as Justice Shostak mentioned, we have to look at it within the purview of Strickland, which is, did the defendant make a substantial showing of constitutional violation in his post-conviction petition that he meets both prongs of Strickland, both the deficiency prong and the prejudice prong? And our attention both at the trial court and here is that he failed to make a substantial showing on both prongs. Just to touch to the prejudice prong, defendant is arguing that prejudice should be presumed because there is a question of whether or not there's a potential of jury bias, prejudice should be presumed. That argument has been rejected by the Illinois Supreme Court twice, both in People v. Manning and People v. Metcalf. In both of those cases, the defendant argued that his counsel for failing to strike a bias juror, a juror that had questioning that showed potential bias and the failure to do so, he was prejudiced and that prejudice should be presumed. The Illinois Supreme Court rejected that argument, saying that that does not fall within one of the, within the paradigm of chronic and so therefore you still have to prove the prejudice prong under Strickland, which is, should there be, whether or not the trial, excuse me, the trial would have been different. And in this case, as we set forth in our brief, and as we set forth in the trial below, there was overwhelming evidence. But should the state, or should the defense attorney have been a little more aggressive in inquiring about gang bias? I mean, you have a trial court judge finding how his performance was deficient. I mean, do you think that he should have gone and questioned a little bit about it? I mean, what was his strategy? What could his strategy have been? Well, as we set forth in our brief, the issue before the court at trial was whether or not the defendant was guilty by association. He was tried, he was charged by first degree murder, by accountability, as well as felony murder in that he and his co-defendant committed the crime of mob action and as a result. Right, so his association with the other gang members. Was an association together with the other person because the strategy at trial was not that the defendant pulled the gun or shot the victim, but that he was with the co-defendant who pulled the trigger and shot the gun. And the voir dire reflects that defense counsel sought to determine whether or not some of the potential juror members could be unfair and impartial by guilt, by association. Was trying to determine whether or not, what their feelings are of a defendant who was with somebody else and that person committed a crime and whether or not they could be fair and impartial about guilt by association. And I started on page 12 of my brief, several instances in which the defendant. But weren't all of those questions posed to the second panel? He asked no questions to the first group of jurors that were selected. So six are sent home or put in the jury room. Never heard a word about gang violence, gang bias. Well, I mean, how do we possibly justify that as trial strategy? If it was strategy and I didn't do it with the first group, then it would assume to be strategy for the second group. Counsel didn't ask, counsel asked questions of the first panel. It's not as if counsel got up and said, I will, I will accept the entire panel. Did he ask any questions? No, it's crystal clear. He asked no questions to that first group about gang affiliation or gang violence or feelings about that. So my point is if it's if it was trial strategy not to ask at all, then why did he ask the second group? I apologize. I'm not saying it might have been trial strategy not to ask. I'm saying the trial strategy that he attempted to do was to ensure that there was any if there was any issue about the defendant who was not the man who pulled the trigger, whether or not he could be guilty by accountability for the person. Right. That's my point. He didn't ask any of those questions to the first half of the jury. The first half of the jury, you are correct, Justice Jorgensen, he did not mention the word gang. But I do believe that the panel, there were questions about guilt by association. And if Your Honor would like, I'm more than willing to provide those record citations following argument. But nonetheless, what the defense counsel tried to do was ensure that the jury could be fair and impartial and look to determine whether or not they have to look at the evidence presented and not merely find the defendant guilty because he was with another individual who did commit the murder. And as the trial court, you know, properly admonished the jury that you have to be fair and impartial. And the defendants, excuse me, defense counsel's questions reflected as such. And so therefore, we would argue that we believe that the trial court's ruling that it was not deficient below is incorrect. And as Justice Chesler pointed out, there are several cases that talk about the fact that voir dire is very deferential and the issue of whether or not to question how to question a panel, a prospective panel of jurors on gang bias is trial strategy. And what he decides to do is trial strategy. And those are, you know, as people be Ferg and I believe people be Macias, M-A-C-I-A-S. I believe those are the two. And I think they were cited both at the trial level. Is there a first district case Powell? Powell too, yes. Yes. And those cases weren't both the victim and the perpetrator gang members? Yes. Does that make a difference? In my, you know, in our opinion, it is trial strategy as to how to conduct the voir dire to determine that you get a fair and impartial jury. Whether or not the victim and the defendant were both, you know, gang members, we would argue that that is not necessarily a deciding factor as to whether or not a counsel is deficient. But really what we have here is we have evidence that we have the defendant's statement that he confessed that he was there. He confessed that he drove his co-defendant to the area. He confessed that when he drove his co-defendant, he knew that his co-defendant had a 9mm gun. He stated that he knew that they were, he followed the co-defendant to the building. He saw his co-defendant pull a gun. He saw the co-defendant shoot into the window. He and the co-defendant tried to get into the building before they shot into the window. When the co-defendant shot into the window, they both ran and got back in the defendant's car and drove away. Then the defendant returned with the co-defendant the next day to tag the area indicating that they were the ones who were responsible for the shooting. That's the evidence before, that was the evidence before the jury. And not only the defendant's statement, but there's multiple pieces of evidence that corroborate the defendant's statement that further shows it's overwhelming. Mr. Felix, here about, here about, I apologize, I'm going to mispronounce his name. Here about, here about Felix testified in line with the defendant's statement that he was downstairs and saw two men trying to get into the building in which ultimately he was shot up. He saw two men trying to get in, they left, and then he heard very shortly after several shots fired into the ground floor apartment. That corroborates the defendant's statement. The bullets recovered from the apartment and in the victim's body, as well as the casings that were recovered in the area outside the window, were from the 9mm gun. And those were all, all the casings and the bullets came from one single weapon. Defendant also identified when he, when he, when he talked to the police where he was, where he tagged the areas. That area is matched up with where they found the gang evidence tag. And he also indicated from what angle that they shot at the window. He made notations on the pictures showing how they did the angle, where they fled, and, you know, things of that nature that corroborated much of the defendant's statement. This evidence is overwhelming to find that the defendant was guilty by accountability. He knew before they went that his co-defendant had a gun. They knew they were going to go look for some Latin kings. And subsequently, they did find, you know, they did shoot someone, albeit not a Latin king, but an innocent bystander. That, that is overwhelming evidence. And that evidence prohibits the defendant from being able to find, to make a substantial showing that he meets the prejudice prong of Strickland. Which is, would this trial be different? And the defendant's standard such that prejudice must be presumed flies in the face of Strickland. It asks this court to depart from the Illinois Supreme Court rulings of Manning and Metcalf that prejudice should be presumed in issues of ineffective assistance of counsel regarding juror bias, juror bias issues. Let me ask you one quick question. I was a little bit taken aback by the exchange between the one juror who had police officer friends who said that he discussed these types of cases. I think he maybe said he discussed this case with them, but they didn't discuss, like, the facts of the case. And the attorney never struck that guy. I mean, I don't know, do you find that curious when you have a witness who said he not only has police officers who are friends who arrest gang bangers, but they actually spoke to him about this particular case? I mean, we're at post-conviction stage. Isn't this the gist of a claim that defense counsel was ineffective? Well, respectfully, this is the second stage, so it has to be more than a gist. It has to be, he has to make a substantial showing that he has ineffective assistance. So it's beyond arguable basis. At this point, he has had counsel. Counsel has been given time to amend. So there's a higher burden and threshold to meet. That being said, the entire exchange between that juror, I believe, and I can get the record citation after this argument, believe that the defense counsel questions him on the ability to listen to the evidence and the ability to, if he were to find the defendant not guilty, could he do that in light of the fact of his friendships with the officers and his closeness with the officers? And the juror said, yes. Yes, I can listen to the evidence. Yes, I can be impartial. Yes, I can put aside any friendships or notions that I might have and decide the case on the evidence presented. So in terms of whether or not he struck him or not, counsel's questioning indicates that he was aware that there might be some potential bias, and it was, whether or not we're speculating, that's trial strategy. Yeah, that's my question. And what can trial strategy be when he said, you had mentioned you remember reading something about this case. Did the police officers ever talk to you about this case? And the answer was, one of the officers I was with this weekend, we did talk about it. And then he says, well, not this weekend, but. And he said, oh, was it when it happened? We talked about it when it happened. And was it about this case? The answer, yeah, it was about this case. The Salazar name keeps coming up. What could your strategy be for keeping a guy on a jury who spoke to the police officer who arrested this guy or who was on a department that arrested this guy? I mean, what could your trial strategy be? And how could you believe him when he says, I think I can be fair and impartial? Well, isn't that enough? For deficiency? To make a substantial showing? To make a substantial showing for a post-conviction. Well, I don't believe that the individual knew the arresting officer. I don't think that that comes through in the voir dire. I believe that the question was. He was friends with somebody on the department. With people on the department and that department might have been assisting the other agencies that were involved. It's counsel's choice and strategy as to who he decides to retain on the jury. And that is a strategy. That is my question to you. What could his strategy be for keeping this guy on the jury? Maybe he'll get some more information from the police and share it with the rest of the jurors. I mean, look at the strategy. Whatever he's going to share with the jurors can't be good. Well, looking at his voir dire in whole, counsel did inquire to ensure that he could be fair and impartial and that he would decide the case on the evidence presented at the trial. He did say I'm a very fair person. He does. He's a very fair person. And, you know, the juror members are responding. You know, we are taking to consider the juror members are responding truthfully. And counsel decided that based on those questions, he did not believe he wanted to exercise a peremptory. The record reflects that counsel did exercise some peremptories. Obviously, for reasons that see my time is up. Just go ahead. You can keep going. Just so you know, counsel did exercise peremptory. So it's not as if counsel just accepted the juror, the jury veneer without any sort of questioning. He took the question. He took the responses that the juror members gave and made a decision as to which jurors he decided to keep. He did determine that he kept members who would understand potentially his theory of the case, which was he believed that mere presence was not enough to be found guilty of accountability. Those juror questions are reflect, you know, his questions reflect that strategy to do so. And the fact that we are now second guessing whether or not what his strategy was, what his counsel was, and that's precisely what Strickland says we should not be doing. We should not be looking in hindsight. We should be looking at whether the counsel's actions were without, with no basis, and has no legal basis in determining whether or not it was appropriate or not. Thank you. If there are no further questions. Just one quick question. Did I hear you just say a few minutes ago that he did exercise some peremptory challenges? Yes, I believe so. Do you know how many we have left at the end? I'm looking on page 126 of the common law record, which is the jury panel. From my understanding, he exercised four peremptories, jurors number 17, 35, 138, and 18. So you have three left? I believe so, yes. And there were two jurors that were excused for cause based on this record. So it's not as if counsel was not unaware that he could exercise four peremptories, and he did so. Thank you.  Thank you, Your Honor. Counsel refers to People v. Mann and People v. Metcalf. I'd like to distinguish those cases for Your Honors. Those are situations where the potential jurors were questioned about points of potential bias. Counsel received answers and left the juror on the jury anyway. The argument before the reviewing courts was allow this particular juror to serve on the jury, put a biased juror on the jury. And I believe the reviewing court said, well, that's a matter of strategy. You obtained the necessary factual information for you to make a choice. We're not going to second guess your choice. Why is that not the case here, Mr. Kirkham? I mean, you know, she argues, well, he had the opportunity to question jurors. He decided to question some, not all of them, with regard to gang activity, and there was a reason for it. It was a trial strategy. He questioned only one juror about gang bias. But the other panel members heard. There were no questions. The word gang doesn't appear before the jury before six jurors are seated and sent home for the night and told to come back the next morning to hear opening statements. The first half of the jury had no idea that this was going to be about gang violence or gang activity at all. I know you ask about the juror who had the cop friends. I believe he's the same juror who said on a scale of one to ten, his common sense was 12. Why did Mr. Carroll keep him on the jury? I can't answer that question. I would observe that it, to me, is another example of how badly counsel botched the whole jury selection process. But I understand Manning and Metcalf say that once you know the facts and you make a strategic choice to keep that juror, we're not going to second-guess that choice. Even knowing that, you still have 11 other jurors in there who went unscreened. Let me correct that. Because the juror who did ask about gang bias, who said, that won't affect my right to be a fair juror, was also seated on the jury. So we've got at least ten jurors who were never questioned about gang violence. We've got at least six jurors who had no idea that the case involved gang activity. And until opening statements, when the statement said that's all there is to the case. Isn't the crux of your argument, though, that gang affiliation in and of itself is of such a prejudicial nature that counsel must conduct voir dire on it regardless of the facts of the case? Isn't that really the crux of your argument? I wouldn't say regardless of the facts of the case. I mean, I understand FERJ in those cases and respect those cases. You know, where reviewing courts say there is a trial strategy to lay low on the question of gang activity and not go into that. When it is cases where it's not going to be the central theme of the case. Where both the victim and the defendant are gang members and they may think it doesn't favor one side or the other. It may even be prejudicial to the state. But in this case, where the gang evidence is so overwhelming, the trial court at the post-commissioned petition hearings said it was totally about gang activity. You know, when we talk about strain, where the problem with strain was that the trial court's refusal to ask the question submitted by defense counsel left defense counsel with no factual basis on which to, without a sufficient factual basis on which to exercise primary challenges or move for cause based on gang bias. And that's what we have here. At least ten of the jurors where counsel just had no basis on which to say, you know what, this guy can't give my client a fair trial because of gang bias. And that's ineffective assistance of counsel. It's deficient performance to deprive the defendant of a fair trial. Anything further? Thank you. Thank you. Thank you, sir. I want to thank the attorneys for their very intelligent arguments today. It's always a pleasure. When I said this on the first case, and I truly mean it, it is always a pleasure when you have attorneys before you who are professional, who are very educated, know the facts of their case, and do a great job like you folks did. So thank you very much for coming in this morning. We will take this case under consideration, render a decision in due course. We'll be in brief recess before the next case begins. Thank you.